UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAD DEWULF,

                    Petitioner,                        Case Number 11-14603
                                                          Honorable David M. Lawson

v.

KENNETH McKEE,

                    Respondent,
_____/

## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Tad Dewulf has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions and sentences for interfering with a police investigation and assault and battery. A Livingston County, Michigan circuit judge sentenced him as a fourth felony habitual offender to prison terms totaling nine to thirty years. Dewulf presently is on parole. He alleges in his petition that the statute defining the crime of interfering with a police investigation did not give him fair warning that his conduct was illegal, there was insufficient evidence to convict him of that charge, he was denied the right to the counsel of his choice at the preliminary examination, the prosecutor withheld exculpatory impeachment evidence, he was deprived of the effective assistance of trial counsel, he was denied the right to question five replacement jurors during the jury selection process, and he was denied the right to confront witnesses. The respondent has filed an answer asserting that the petitioner's claims lack merit. The Court agrees. Therefore, the petition will be denied.

I.

The Michigan Court of Appeals on direct appeal adequately summarized the facts as follows:

Defendant's convictions arise from an altercation between defendant and the victim in the early morning hours of July 6, 2003. Earlier in the evening, defendant and the victim were at a bar. The victim testified that she and defendant began arguing because defendant thought that she was flirting with a friend's boyfriend. After leaving the bar, defendant and the victim drove to the victim's house where defendant had left his truck. On the way, defendant demanded that the victim stop the car and when she did, he tried to shove her out, striking the victim in the jaw. Defendant apologized and they returned to the victim's home. As the victim was entering her house, she heard defendant say that he would kill her if she called the police. She believed him and became scared.

The next morning, the victim sought medical treatment for her jaw. The police were called because the victim was injured in an assault. The victim did not identify her attacker to any of the medical personnel and spoke to the police for approximately 15 minutes before she identified defendant. The questioning officer stated that the victim's reluctance to identify defendant interfered with his investigation.

*People v. Dewulf,* No. 258148, 2007 WL 1488389, at * 1 (Mich. Ct. App. May 22, 2007).

The petitioner raised seven claims on direct appeal:

I. Did the Trial Court err in denying Defendant-Appellant's Motion for New Trial and Directed Verdict on the basis of violation of Appellant's right to counsel at his preliminary examination?

II. Did the Trial Court err in allowing a jury verdict to stand despite lack of evidence to prove beyond a reasonable doubt that Appellant committed any crime?

III. Did the Trial Court err in denying Appellant's Motion for a new trial because the prosecution's misconduct at Appellant's preliminary examination and trial amounted to reversible error?

IV. Did the Trial Court err in denying Appellant's motion for directed verdict and new trial on the basis of Appellant not receiving a fair trial because of ineffective assistance of trial counsel?

V. Did the Trial Court err in denying Appellant's motion for directed verdict and new trial on the basis that the prosecutor's statements in his closing argument were improper and did not afford Appellant a fair trial?

-2-

VI.  Did the Trial Court err in denying Appellant's motion for directed verdict and new trial on the basis that the Appellant did not receive a fair trial because the trial court refused to admit statements into evidence tending to establish a motive or lack of motive?

VII.  Did the Trial Court err in sentencing Appellant on OV 3, OV10, and OV13?

The Michigan Court of Appeals affirmed the petitioner's convictions in an unpublished opinion, *People v. Dewulf*, No. 258148, 2007 WL 1488389, at *1 (Mich. Ct. App. May 22, 2007), but the case was remanded to the trial court for re-sentencing on the conviction for interfering with a police investigation.  *Ibid.*  The petitioner subsequently sought leave to appeal in the Michigan Supreme Court on the following grounds:

I. Where appellate counsel does not file a reply brief, does the court of appeals violate a criminal defendant-appellant's right to access the Courts by returning his *in propria persona* reply brief when the appellee's late filing did not occur until after the time for the defendant-appellant to make his filing date for his supplemental brief?

II.  Did the court deny the defendant-appellant his vested constitutional right to choice of counsel where the defendant-appellant told the Court he could no longer represent himself, had the financial ability to retain his own attorney, and was denied his first request for an adjournment to do so?

III.  Did the court fail to consider the "fair warning" requirements when it made an expansive interpretation of MCL 750.483a(3)(b) which includes conduct not explicitly expressed within the statute or within the Legislative intendment?

IV.  Can the defendant-appellant's conviction be sustained where the prosecution failed to present any evidence on two of the required elements of the crime of interfering with a police investigation?

V.  Was the defendant-appellant denied his Sixth Amendment right to effective assistance of counsel where trial counsel was later found to have been incapacitated from the practice of law before and during the defendant-appellant's trial; and, where trial counsel's performance was constitutionally deficient in many instances of his representation of the defendant-appellant denying him a fair trial?

VI.  Did the trial court violate the defendant-appellant's constitutional rights to present a defense and confrontation when it excluded testimony tending to disprove the alleged motive, and that the complainant engaged in a pattern of untruthfulness?

VII.  Did the trial court violate the defendant-appellant's constitutional right to Due Process when it considered improper considerations in fashioning the defendant-appellant's sentence; when it scored the defendant-appellant on OV3 and OV10 where there was no evidence to support the scorings?

VIII.  Did the court of appeals erroneously fail to reverse the defendant's convictions and enter a judgment notwithstanding the verdict, acquitting the defendant-appellant, or alternatively, a new trial, or an evidentiary hearing where the defendant-appellant had presented claims warranting such relief?

On January 22, 2008, the Michigan Supreme Court denied leave to appeal.  *People v. Dewulf*, 480 Mich. 1032, 743 N.W.2d 205, 206 (2008).

On remand, the trial court imposed the same sentence, nine to thirty years in prison.  The petitioner appealed his sentence to the Michigan Court of Appeals, arguing that the court should remand his case again for resentencing because there was insufficient evidence on the record to support the Court's scoring of the guidelines.  The court of appeals remanded the case for re-sentencing a second time.  *People v. Dewulf*, No. 286047, 2009 WL 5195959, at *1 (Mich. Ct. App. Dec. 15, 2009), *reconsideration denied* No. 286047 (Mich. Ct. App. January 14, 2010).

Following the second remand, the petitioner once again was sentenced to nine to thirty years in prison.  After his resentencing, the petitioner filed another appeal in the court of appeals, raising two claims related to his sentence: (1) he was entitled to resentencing because the trial court erred in departing upward from the sentencing guidelines without substantial and compelling reasons when the articulated reasons for the departure were already taken into account in the calculation of the guidelines; and (2) he was entitled to resentencing because the trial court relied on inaccurate information and erred in the scoring of the guidelines.  However, the court of appeals dismissed his

-4-

appeal after the petitioner moved to withdraw it. *People v. Dewulf,* No. 299483 (Mich. Ct. App.

May 11, 2011).

On October 19, 2011, the petitioner filed his habeas petition with this Court, raising the

following claims:

I.   The petitioner was convicted in violation of the Due Process Clause of the
     Fourteenth Amendment because the petitioner's alleged conduct was not
     explicitly expressed to be within the scope of MCL 750.483a(3)(b) as the
     "fair warning" requirements of *Lanier* mandate, US Const Am V, XIV.

II.  The State failed to present proof beyond a reasonable doubt on two of the
     essential elements of the crime of interfering with a police investigation in
     violation of the Due Process Clause, US Const Am XIV.

III. The petitioner was denied his Sixth Amendment right to choice of counsel
     at the preliminary examination, US Const Am VI, XIV.

IV.  The State withheld impeachment evidence and allowed the false testimony
     of the only witness to the alleged crimes to go uncorrected in violation of due
     process of law, US Const Am XIV.

V.   Trial counsel's incapacitation constructively denied the petitioner his Sixth
     Amendment right to effective assistance of counsel before and during his trial
     rendering trial counsel's performance constitutionally deficient on numerous
     instances resulting in the petitioner being denied a fair trial, US Const Am
     VI, XIV.

VI.  The trial court denied the petitioner his right to voir dire five jurors impairing
     his ability to challenge members of the jury, and to present a defense in
     violation of his constitutional rights to a fair trial and confrontation, US
     Const Am VI.

Pet. at 8. The respondent has filed an answer to the petition arguing that the petitioner's conduct

fell within the language of Michigan Compiled Laws 750.483a(3)(b), sufficient evidence supported

the petitioner's conviction, and the Michigan Court of Appeals' rejection of the petitioner's right

to counsel claim was not contrary to or an unreasonable application of clearly established federal

law. The respondent also argued that the petitioner has failed to establish a *Brady* violation, his

counsel was ineffective because of his alleged incapacitation, or that he was deprived of the opportunity to engage in *voir dire* of the jury.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Dewulf filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 786-87 (2011).

-6-

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wrigglesworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner first contends that his conviction for interfering with a police investigation is unconstitutional because his conduct in this case did not fall within the plain language of Michigan Compiled Laws § 750.483a(3)(b). The statute states:

A person shall not do any of the following:
. . .

-7-

(b) Threaten or intimidate any person to influence a person's statement to a police officer conducting a lawful investigation of a crime or the presentation of evidence to a police officer conducting a lawful investigation of a crime.

The petitioner argues that the language of this statute only forbids persons from interfering with an ongoing police investigation, not a future police investigation that had yet to commence at the time that the threat was made.

The petitioner did not raise this precise issue in the Michigan Court of Appeals on direct appeal. He did challenge the sufficiency of the evidence by arguing that the statute required an ongoing investigation, and there was no evidence of any such investigation at the time the threat was made. In rejecting that argument, the court of appeals interpreted the statute to mean that a police investigation need not be underway at the time of the threat or intimidation. *People v. Dewulf*, 2009 WL 5195959, at *4 (holding that section "750.483a(3)(b) does not require that there be a pending investigation at the time the threat is made"). That interpretation apparently was novel, and tended to blur the distinction drawn by the statute between conduct that interfered with *reporting* crimes (section 750.483a(1)(b), which proscribed "[p]revent[ing] or attempt[ing]  to prevent through the unlawful use of physical force another person from reporting a crime committed or attempted by another person"), and conduct that interfered with the investigation of *reported* crimes (section 750.483a(3)(a), which prohibits bribing a person to influence a statement "to a police officer conducting a lawful investigation of a crime"; and section 750.483a(3)(b), quoted above). In response to that judicial interpretation of the statute, the petitioner argued in his leave application to the Michigan Supreme Court that the language of the statute does not give fair warning to persons that the prohibition on interfering with a police investigation by threats includes interference with future as well as present police investigations.

-8-

Although the Michigan Court of Appeals did not address the petitioner's notice argument, it did hold that a "plain reading of the statute shows that it is sufficient that the purpose of the threat is to influence a person's statement to a police officer when that officer questions the person in connection with a lawful investigation." *Dewulf*, 2007 WL 1488389, at *4. That court determined that the phrase "conducting a lawful investigation" described the police officer's reason for obtaining the statement, as well as "the context in which the threat was designed to affect the person's statement." *Ibid.* It is fair to conclude that if the court believed that its interpretation of the statute could be discerned from its "plain reading," then the statute would provide fair notice to any reader that a threat intended to dissuade a person from cooperating in a future police investigation amounted to criminal conduct. And although the Michigan Supreme Court did not address the notice issue specifically, this Court must assume that the court rejected the claim on the merits in its summary order, triggering AEDPA's deferential standard of review. *Harrington*, 562 U.S. at 98 (holding that "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief").

The Supreme Court has clearly stated that the Due Process Clause requires "that a criminal statute give fair warning of the conduct which it prohibits." *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964). In *Bouie*, the petitioners were convicted under a South Carolina trespass statute that did not plainly proscribe their conduct on its face, but which was expanded by a subsequent interpretation by the state judiciary to cover their conduct. The Supreme Court has explained, however, that "[d]ue process . . . does not countenance an 'unforeseeable and retroactive judicial expansion of narrow and precise statutory language.'" *Metrish v. Lancaster*, --- U.S. ---, 133 S. Ct.

2:11-cv-14603-DML-LJM   Doc # 18   Filed 03/16/15   Pg 10 of 29   Pg ID 1941

1781, 1787 (2013) (quoting *Bouie,* 378 U.S. at 352). Dewulf argues here that the Michigan Court of Appeals's interpretation of section 750.483a(3)(b) broadened that statute so as to offend the Due Process Clause's fair warning requirement.

"There are three related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997). "First, the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Ibid.* (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). Second, "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Ibid.* (citations omitted). Third, due process prohibits courts from applying a novel construction of a criminal statute to conduct or behavior "that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Ibid.* "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267. Moreover, a "determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie*, 378 U.S. at 355, n.5.

In this case, the petitioner's argument must be read to invoke *Lanier*'s third manifestation of the fair warning requirement. There were no interpretations of section 750.483a(3)(b) before the court of appeals addressed it in this case, so the question presented must be whether the petitioner could know that his conduct was "fairly within [the] scope" of the statute as the court interpreted

-10-

it.  Conduct will be deemed fairly within the scope of a judicial construction of a criminal statute unless that construction is "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'"  *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (quoting *Bouie,* 378 U.S. at 354).  And because this Court must presume that the Michigan Supreme Court found that the court of appeals's interpretation was not "unexpected or indefensible," a habeas writ may not issue unless that finding amounts to an unreasonable application of *Bouie* or *Lanier*.

Section 750.483a(3)(b) is part of a larger statute that protects official access to information that may relate to the various stages of the prosecution of crimes.  It prohibits (1) withholding evidence that a court has ordered produced, *id.* § 483a(1)(a); (2) preventing reports of crimes through "the unlawful use of physical force," *id.* § 483a(1)(b); and (3) retaliating against a person for reporting a crime, *id.* § 483a(1)(c).  As noted above, it also prohibits bribing and intimidating a person to influence the person's statements to a police officer "conducting a lawful investigation of a crime."  *Id.* § 483a(3)(a)&(b).  And it prohibits tampering with evidence "to be offered in a present or future official proceeding," *id.* § 483a(5)(a), and offering false evidence at official proceedings, *id.* § 483a(5)(b).  A sensible reading of the statute suggests that section 1 deals with reporting crimes, section 3 deals with ongoing investigations, and section 5 addresses the official proceedings that might follow.  In that context, the court of appeals's interpretation of section 750.483a(3)(b) confounds the statute's reporting protections with its investigation protections.  To violate section 1, which protects reporting of crimes, a person must use "physical force"; but once an investigation is under way, threats and bribes are enough to violate the law.

The court of appeals reasoned, however, that "[t]he phrase 'conducting a lawful investigation' describes the police officer's reason for obtaining the statement," *Dewulf*, 2007 WL

1488389, at *4, not the relative sequence of events in which the threat is made.  Under that view, if a threat would influence a person's statement during a future investigation, a violation would occur.  Although that interpretation ignores context, and may not even be within the legislature's intent, it is difficult to conclude that the interpretation is "unexpected or indefensible."  And it is even more difficult to find that the state supreme court's imputed decision that the statutory language provided fair warning of that interpretation amounted to a misapplication or unreasonable interpretation of federal law as construed by the Supreme Court.

The Michigan Court of Appeals's interpretation of section 750.483a(3)(b) may not be the best interpretation, or even the second best.  But because federal habeas courts must afford state-court decisions "the benefit of the doubt," *Renico v. Lett*, 559 U.S. at 773, it cannot be said that the petitioner has shown an entitlement to a writ of habeas corpus on this claim under 28 U.S.C. § 2254(d)(1) or (2).

## B.

The petitioner next contends that there was insufficient evidence to convict him of interfering with a police investigation.  It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . .  [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

-12-

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

The petitioner bases part of his attack on the premise that a conviction for interfering with a police investigation under section 750.483a(3)(b) requires proof of a pending police investigation; the possibility of a police investigation that has yet to be initiated is not enough. That argument must fail because the state appellate court held that the statute prohibits a defendant from interfering with a future, as well as a present, police investigation. With that finding, there is not much more to be said. The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Prescribing the elements of state law crimes is for state courts, not federal courts. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). "The petitioner may have a colorable claim that the state intermediate appellate court incorrectly interpreted state law, or that it created a conflict with prior precedent. But those questions are beyond the reach of this Court. State courts are the final authority on the meaning of state law." *Ray v. McQuiggin*, 2013 WL 5493008, at *6 (E.D. Mich. 2013). This Court must therefore defer to the Michigan Court of Appeals's construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

Here, the trial evidence established that the petitioner assaulted the victim, he told her that if she reported the assault to the police he would kill her, when receiving medical treatment the

police were called, she initially refused to identify her attacker, and her reluctance interfered with the officer's investigation. Those facts establish the elements of the offense as the sate court defined them.

The petitioner also argues that the evidence was insufficient because the victim in this case was not credible. That argument, however, is a nonstarter. A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Ibid.* (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)). The Court need not be convinced that the petitioner is actually guilty beyond a reasonable doubt, provided there is sufficient evidence in the record to support the jury's verdict. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995). As noted above, the evidence was sufficient to make out the crime. The victim's credibility is not a question that can be reassessed by this Court.

## C.

The petitioner next contends that he was denied the right to the counsel of his choice at the preliminary examination. According to the record, at the first preliminary examination date of July 22, 2003, the petitioner asked to have his court-appointed counsel replaced because of a personal conflict, but the district court judge refused. The petitioner decided to represent himself at the preliminary examination, although he was furnished standby counsel. The preliminary examination was continued on July 29, 2003. On that date, the petitioner told the district court judge that he was overwhelmed with representing himself and his father was in the process of hiring private counsel.

-14-

The petitioner asked the court to adjourn the preliminary examination until his father could retain counsel, but the district judge refused and the petitioner represented himself for the remainder of the preliminary examination.  The petitioner argues that the district court judge erred by compelling him to represent himself at the preliminary examination without first obtaining a proper waiver from the petitioner of his right to counsel.

The Michigan Court of Appeals agreed that the district judge failed to obtain a proper waiver of counsel, and that constitutional error resulted.  However, the court did not grant relief because it found that the error was harmless.  The court explained:

> Defendant argues that he was prejudiced because he was denied the ability to develop before trial his claim that the victim admitted fabricating the allegations. However, defense counsel appeared on behalf of defendant almost eight months before the trial began and defendant was not prevented from presenting such a defense at trial.  This case is distinguishable from *Willing, supra*, in which the defendant was denied his right to counsel at both a *Walker* and an entrapment hearing.  These hearings were the defendant's only opportunity to present an entrapment defense and led to the admission of the defendant's police statement at trial.  Here, defendant was able to present his defense at trial, where he was represented by counsel, and no evidence procured at the preliminary examination was used against him at trial.  We therefore conclude that defendant was not prejudiced by his ineffective waiver of counsel at the preliminary examination and, accordingly, is not entitled to a new trial.

*Dewulf*, 2007 WL 1488389, at *2.

The state court's finding of constitutional error was correct.  Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI.  The "plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" *United States v. Wade*, 388 U.S. 218, 225 (1967).  A criminal defendant has the right to the advice of

-15-

counsel at "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 226.

When a criminal defendant is deprived of counsel at a preliminary hearing, "the test to be applied is whether the denial of counsel . . . was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970) (citations omitted); *see also Adams v. Illinois*, 405 U.S. 278, 282-83 (1972) ("the lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal.") (internal quotation marks omitted); *accord Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985); *McKeldin v. Rose*, 631 F.2d 458, 460–61 (6th Cir. 1980); *Dodge v. Johnson,* 471 F.2d 1249, 1252 (6th Cir. 1973) (record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

The petitioner has not shown that he was prejudiced by the absence of counsel at the preliminary examination.  As the state court noted, the petitioner was represented by trial counsel for some eight months prior to trial.  During that time, defense counsel was able to develop his defense that the victim had made up these charges against him and was able to present such a defense at trial.  No evidence from the preliminary examination was admitted against the petitioner at his trial.  The Michigan Court of Appeals's determination that the denial of counsel for the petitioner at the preliminary examination was harmless error was not an unreasonable application of clearly established federal law.  The petitioner is not entitled to habeas relief on his third claim.

D.

The petitioner next argues that the prosecutor deprived him of a fair trial by not providing him with a copy of the victim's medical report before the preliminary examination.  That argument

-16-

suggests a violation of the Due Process Clause. However, the report was provided to defense counsel after the preliminary examination and he was able to use it at trial.

Suppression by the prosecution of evidence favorable to the defendant violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, the petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The petitioner is not entitled to habeas relief on his *Brady* claim, because the victim's medical report was turned over to him well before trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a failure by the prosecutor to disclose the information. *See United States v. Davis*, 306 F. 3d 398, 421 (6th Cir. 2002). The medical report was provided to the defense after the preliminary examination and before trial. There is no clearly established Supreme Court decision that requires that exculpatory evidence be provided to a defendant before a preliminary examination. There may be a case in which the delay in such disclosure will offend the Due Process Clause, but this is not it. Moreover, the language from *Brady* and other Supreme Court decisions suggests that the right to exculpatory evidence is a trial right. *Brady*, 373 U.S. at 87–88 (stating that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him . . . helps *shape a trial* that bears heavily on the defendant") (emphasis added); *United States v. Agurs*, 427 U.S. 97, 103-04 (1976) (holding that the prohibition of the use of perjured testimony, upon which the *Brady* rule was

-17-

founded, is based on the idea that the use of such testimony represents "a corruption of the truth-seeking function of the *trial process*") (emphasis added); *United States v. Bagley*, 473 U.S. 667, 678 (1985) (holding that "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a *fair trial*") (emphasis added).  In the absence of any Supreme Court caselaw that requires the disclosure of exculpatory evidence to a criminal defendant prior to the preliminary examination, the prosecutor's failure to provide the victim's medical report to the petitioner before the preliminary examination in this case does not entitle him to habeas relief, when the petitioner ultimately had this report at trial. *Maglaya v. Buchkoe,* 515 F. 2d 265, 268-69 (6th Cir. 1975).

E.

The petitioner next contends that he was deprived of the effective assistance of trial counsel in a variety of ways.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective assistance of counsel claims.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To establish a claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice.  *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*,  556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult.  The Supreme Court recently explained:

> "Surmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) . . . .  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S. at 690.

-18-

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
> are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7
> (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S.
> at 123. The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. *Ibid.* Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with unreasonableness under
> § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Richter*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's

determination' under the *Strickland* standard 'was incorrect but whether that determination was

unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v.

Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Ibid.* (citing *Alvarado*, 541 U.S. at 664).

1.

The petitioner first contends that he was constructively denied the assistance of counsel

because his lawyer was suspended from the practice of law for a time and suffered from various

health problems. The Supreme Court has recognized that the "[a]ctual or constructive denial of the

assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of

state interference with counsel's assistance." *Strickland,* 466 U.S. at 692. In this case, however, the

record demonstrates that the suspension and health issues did not overlap the period of the trial.

The petitioner's trial counsel received a thirty-day suspension from the practice of law on

December 1, 2003 for an ethical violation that was unrelated to the petitioner's case. The suspension

was automatically terminated on March 22, 2004 after the petitioner's counsel filed an affidavit of

compliance with the Michigan Supreme Court on March 16, 2004. The petitioner's trial began on May 4, 2004 and continued until May 10, 2004. The petitioner was sentenced on June 3, 2004. On April 21, 2004, the Grievance Administrator filed a petition with the Attorney Disciplinary Board seeking an order increasing counsel's discipline, based upon allegations that the affidavit of compliance filed by the petitioner's counsel with the Michigan Supreme Court contained fraudulent information. The Attorney Discipline Board and the petitioner's counsel agreed that counsel's suspension would be increased to 180 days, but that did not occur until July 29, 2005. On the same day, the Attorney Disciplinary Board also suspended counsel's license for a period of three years for neglecting two unrelated legal matters.

During the initial suspension, there was one court date, but that was merely to inform the petitioner that his counsel had been suspended from the practice of law. The trial court gave the petitioner the option of obtaining new counsel or seeking an adjournment until his lawyer's suspension had ended. The petitioner requested that the case be adjourned until counsel's suspension was over, and the trial court granted the request. The petitioner's trial took place after defense counsel's initial suspension had ended, and before the increased suspension began. No Sixth Amendment violation can be found in these facts.

The petitioner also argues that he was constructively denied the assistance of counsel because his attorney had surgery on his large intestine and had suffered from severe depression and alcohol addiction. The evidence submitted by the petitioner indicates that counsel suffered from these health problems through the end of 2003. The petitioner has presented no evidence that counsel was suffering from any of these health problems at the time of the petitioner's trial. To the contrary, a review of the trial record indicates that the petitioner's counsel actively participated in

-20-

the jury selection process, including extensive questioning of the potential jurors. Tr. 13, 24-25, 27-30, 48-74 (May 4, 2004).   He successfully challenged a juror for cause and also peremptorily challenged other jurors.   *Id.* at 25, 75-78.   Counsel made an opening statement, *id.* at 23-25; extensively cross-examined the witnesses, *id.* at 41-103, 111-17, 126-39, 141-43; Tr. 15-39, 49-103, 110-52, 154-57 (May 7, 2004); made several objections to the prosecutor's questions and arguments, Tr. 47-8 (May 4, 2004); Tr. 38, 109, 125 (May 5, 2004); Tr. 13 (May 7, 2004); Tr. 12 (May 10, 2004); successfully moved for the admission of several exhibits at trial Tr. 42-44, 130-31 (May 5, 2004);  Tr. 821-82, 90-91 (May 7, 2004); recalled the victim to impeach her trial testimony with her preliminary examination testimony Tr. 158-62 (May 7, 2004); and moved for a directed verdict of acquittal *id.* at 164-66.  Lastly, the petitioner's counsel made an extensive closing argument.  Tr. 15-29 (May 10, 2004).  In light of the counsel's vigorous representation of the petitioner at trial in a lucid and alert manner, the petitioner is hard-pressed to show that counsel's earlier health issues amounted to a *per se* denial of the effective assistance of counsel.  *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (holding that trial counsel's alleged shortcomings at defendant's murder trial were not sufficient to create *per se* prejudice, despite trial counsel's alleged drug and alcohol abuse, where trial counsel was conscious throughout the proceedings, cross-examined state's witnesses, moved for judgment of acquittal, and made a coherent closing argument).

The Michigan Court of Appeals rejected the petitioner's ineffective assistance claim based on counsel's incapacitation because "[t]here is no indication that counsel's earlier incapacitation affected his representation of defendant at trial." *Dewulf*, 2007 WL 1488389, at *5.  That conclusion is based on a reasonable interpretation of the facts.

2.

The petitioner next contends that trial counsel was ineffective by failing to interview or call as witnesses several individuals who had been at the bar earlier in the evening with the victim and the petitioner and by failing to interview or call Ryan Woodid as a witness.  As the Michigan Court of Appeals noted in rejecting the petitioner's claim, none of these witnesses were present during the assault or the threat.  *Dewulf*, 2007 WL 1488389, at *7.

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant.  *Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004).  Because none of those witnesses were present when the confrontation took place between the petitioner and the victim, they could not have exonerated the petitioner of the crimes.  Therefore counsel was not ineffective by failing to call them as witnesses.  *Pillette v. Berghuis*, 408 F. App'x. 873, 885-86 (6th Cir. 2010).

3.

The petitioner next contends that trial counsel prevented him from testifying.  However, a review of the trial record confirms that the petitioner waived his right to testify before the trial court and agreed that counsel had advised him not to testify. Tr. 4-6 (May 10, 2004).

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed.  *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A federal court on habeas review of a state court conviction must indulge "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009) (citation omitted). To overcome this presumption, a habeas petitioner must present record evidence that he or she

-22-

somehow alerted the trial court to his or her desire to testify. *Ibid.* The record here contains no indication that the petitioner disagreed with counsel's advice that he should not testify, the petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his lawyer rendered ineffective assistance. *Gonzales*, 233 F. 3d at 357.

Moreover, the petitioner has not shown that he was prejudiced by his lawyer's advice about whether he should testify or not. The petitioner merely has stated that he would have testified that he did not assault or threaten the victim, without providing any details of his proposed testimony. That is insufficient to establish prejudice. *Hodge*, 579 F. 3d at 641 (holding that the defendant did not demonstrate the requisite prejudice under *Strickland* based upon defense counsel's alleged impairment of his right to testify at a capital murder trial where the defendant did not provide details about the substance of his testimony and merely speculated that his testimony would have had impact on the jury's view of certain witnesses' credibility and of his involvement in murders).

4.

The petitioner next contends that trial counsel was ineffective by failing to object to the prosecutor eliciting testimony from witnesses that they believed that the victim was truthful. When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect. That presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). In the present case, counsel may very well have made a strategic decision not to object to this

-23-

testimony, so as to avoid bringing undue attention to the evidence.  *See Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987).  "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint."  *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006).  Stated differently, the petitioner is unable to show that counsel's failure to object to this evidence — avoiding drawing attention to it — was deficient performance.  *See Smith v. Bradshaw*, 591 F. 3d 517, 522 (6th Cir. 2010).

5.

The petitioner next contends that trial counsel failed adequately to convey a plea offer from the prosecutor to him on two occasions, which caused him to reject the plea bargain.  The petitioner argues that his trial counsel incorrectly advised him that his sentencing guidelines range would be essentially the same whether he pleaded guilty or went to trial, and that this advice caused him to reject the prosecution's plea bargain offer.

The record does not support that claim.  The petitioner and his counsel appeared in court on April 12, 2004, which was the original trial date.  Defense counsel indicated that the petitioner wanted to go to trial.  Tr. 3 (Apr. 12 2004).  After a brief recess, the petitioner stated on the record that he was willing to plead to a reduced charge of attempted interference with a police investigation, domestic violence, and being a fourth felony habitual offender; but that he wanted to plead no contest for purposes of civil liability.  *Id.* at 4-5.  After further discussions between the judge and the petitioner, the prosecutor explained that this particular plea would be made as a "P.D.I."  Apparently, a P.D.I. is a pre-disposition investigation, and is made so that a report from the probation department can be prepared so that the parties have a good idea of the likely sentence the judge would impose upon conviction.  But the judge replied that he did not accept no contest

-24-

pleas on cases involving a "P.D.I." *Id.* at 7. After a brief recess, the judge noted that the petitioner had been offered a "P.D.I." on the morning of trial, which was rarely done. The petitioner rejected that offer. When the petitioner indicated later that he wanted to plead no contest, the judge did not initially realize that the petitioner wished to plead no contest to the offer being made as part of the "P.D.I." The judge again indicated that he would not accept a no contest plea under those circumstances. *Id.* at 8. The following exchange then occurred:

> MR. DEWULF: You're saying that I have to plead guilty then?
>
> THE COURT: Yep. Otherwise we go to trial.
>
> MR. DEWULF: No way I'm going to do that.

*Id.* at 8. At that point, the trial judge rejected the plea agreement and indicated that the case would be set for trial. *Ibid.*

When a habeas petitioner contends that his lawyer's ineffectiveness caused him to reject a plea offer from the prosecution, he must show prejudice by establishing absent the bad advice, there is a reasonable probability that he would have accepted the plea offer and the prosecution would not have withdrawn it in light of intervening circumstances. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than the sentence that in fact was imposed. *Ibid.* When determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. *Id.* at 1389.

The petitioner has not established that he was prejudiced by counsel's supposed deficiencies during plea bargaining, because the petitioner has not alleged that the advice caused him to reject

the plea agreement and go to trial.  Instead, the record shows that the petitioner refused to plead

guilty — a required condition of the agreement — rather than no contest, as he preferred.  The trial

judge would not accept the petitioner's terms.  That cannot be attributed to defense counsel's

performance.

The petitioner is not entitled to habeas relief on his claims of ineffective assistance of

counsel.

F.

The petitioner alleges that he was denied his right to question certain replacement jurors

during the jury selection process.  The Michigan Court of Appeals rejected the petitioner's claim

with these words:

> MCR 2.511(G) provides that after any juror is removed from the panel, a new juror
> must be selected and examined. MCR 2.511(C) provides that the trial court may
> conduct the examination or permit the attorneys to do so.  Thus, defendant had a
> right to have the jurors examined, but not necessarily in the manner he desired.  The
> trial court's voir dire questioning was directed at the entire venire and the
> prospective jurors, regardless of their seat position, raised their hands in response.
> The voir dire system used was an alternate process that the parties agreed to before
> selection.  The record discloses that while defense counsel principally directed his
> examination at the potential jurors seated in the jury box, he also directed questions
> to ones seated outside the box.  Therefore, the record does not support defendant's
> claim that he was denied an opportunity to question replacement jurors.

*Dewulf*, 2007 WL 1488389, at *6 (citation omitted).

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire*

to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).  "[W]ithout an

adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able

impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled."

*Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981).  The Supreme Court, however, has

-26-

admonished that "[t]he adequacy of *voir dire* is not easily the subject of appellate review." *Morgan*, 504 U.S. at 730.  A state trial judge "retains great latitude in deciding what questions should be asked on *voir dire*."  *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991).  A state court's refusal to pose "constitutionally compelled" questions entitles a habeas petitioner to relief. *Id*. at 424-26.  But questions are "constitutionally compelled" during *voir dire* only if "the trial court's failure to ask these questions [renders] the defendant's trial fundamentally unfair."  *Id.* at 425-26.

In the present case, the petitioner has not shown that the trial court judge deprived him of the right to question the prospective jurors in this case.  The trial judge directed his *voir dire* questioning to the entire jury panel and all of the jurors, regardless of their seating position, raised their hands in response.  Although the record shows that defense counsel primarily questioned the potential jurors who were seated in the jury box, he also directed questions at the jurors who were seated outside of the box.  Because the record does not establish that the petitioner was deprived of the opportunity to question the replacement jurors, he is not entitled to habeas relief on this claim.

G.

Lastly, the petitioner argues that he was denied his right to confront the victim witness when the trial judge refused to allow defense counsel to ask her whether she, the petitioner, and another man named Ryan Woodid had engaged in sexual acts together.  The petitioner says that this evidence would have rebutted the prosecution's theory that the petitioner had become angry at the victim because she was flirting with men on the night of the assault.  The trial judge excluded the evidence as being irrelevant.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const.

amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots," which the "Court has been zealous to protect . . . from erosion." *Pointer*, at 404-05 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959)).

However, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Trial judges may impose reasonable limits on cross-examination to preclude harassment, prejudice, and confusion of the issues; protect a witness's safety; and curtail questioning that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [the testimonial] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Fensterer*, 474 U.S. at 22.

In the present case, the trial court excluded this evidence on the grounds that it was irrelevant. The Confrontation Clause is not violated by limiting the questioning of witnesses on the grounds that the evidence is hearsay or irrelevant. *Takacs*, 768 F. 2d at 125. As the Michigan Court of Appeals indicated in rejecting the petitioner's claim, evidence that the victim and the petitioner had engaged in a consensual sexual act with another man would only have tended to show that the

petitioner was not jealous on an occasion when he agreed to participate in such sexual conduct, but would not have necessarily established that the petitioner would not become jealous when the victim flirted with men at a bar without his permission. *Dewulf*, 2007 WL 1488389, at *3. The Michigan Court of Appeals' rejection of his claim was not unreasonable. The petitioner's confrontation rights were not abridged. The petitioner is not entitled to habeas relief on this claim.

III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 16, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI

---